J. CRAWFORD JAMES, Respondent, v. UNITED STATES CASUALTY COMPANY, Appellant.

Kansas City Court of Appeals, June 5, 1905.

1. **APPELLATE PRACTICE: No Change of Theory.** Parties on appeal are bound by the theory, mode and manner adopted in the trial court.

2. **ACCIDENT INSURANCE: Interpretations: Course at Trial.** Where at a trial on an accident insurance policy the parties without objection on either side go into the full extent of disability by the plaintiff they interpret the policy as covering his entire business.

3. ——: ——: **Wholly Disabled.** "Wholly disabled" used in an accident policy does not mean that the assured was rendered absolutely and literally unable to perform any part of his occupation, but that he was disabled from performing substantially the occupation stated therein, although it is further provided in the policy that by said words it "shall be understood that the insured is totally unable to perform any part of the duties pertaining to the occupation stated" therein.

4. ——: **Passenger: Evidence.** The evidence relating to the question whether the plaintiff at the time of his injury was a passenger on a cable car is reviewed and held sufficient to send the question to the jury and to uphold an affirmative verdict.

5. ——: **Notice: Forfeiture.** The failure to give notice as provided in an accident insurance policy will not forfeit the same, although another provision made the claim invalid "unless the provisions and conditions of the contract of insurance are complied with by the insured."

6. **TRIAL AND APPELLATE PRACTICE: Remarks of Judge: Prejudice of Defendant.** *Held,* the appellate court cannot say from the record that anything occurred at the trial to warrant its interference because of the manner of the trial judge.

Appeal from Jackson Circuit Court.—*Hon. James Gibson,* Judge.

AFFIRMED.

*Henry Lee Jost* for appellant.

(1 ) Because the evidence conclusively shows, and the plaintiff admits that he was at no time "wholly disabled." Assn. v. Millard, 43 Ill. App. 148; Saveland v. Casualty Co., 67 Wis. 174; Lyon v. Assn., 46 Ia. 631; Maccabees v. King, 79 Ill. App. 145; McKinley v. Ins. Co., 106 Ia. 81; Smith v. Lodge, 62 Kan. 75, 61 Pac. 416; Knapp v. Ins. Co., 53 Hun (N. Y.) 84; Rhodes v. Ins. Co., 5 Lans. (N. Y.) 77; Bylow v. Ins. Co., 72 Vt. 325; Williams v. Assn., 91 Ga. 678; Merrill v. Ins. Co., 91 Wis. 329; Ford v. Assn., 148 Mass. 153; Spicer v. Ac. Co., 16 Pa. Co. Ct. 163, 4 Pa. Dis. 271; Gracey v. Ins. Co., 21 Pitts. Law Journal 25. (2) The peremptory instruction should have been given, because the evidence conclusively showed, and the plaintiff himself admitted that he was not "immediately" disabled. Williams v. Assn., 91 Ga. 698; Merrill v. Ins. Co., 91 Wis. 329; Pepper v. Ins. Co., 69 S. W. (113 Ky.) 956. (3) The evidence conclusively showed, and the plaintiff admitted that he was not continuously disabled. Authorities cited supra. (4) The evidence conclusively shows that plaintiff was not injured while actually riding as a passenger in a public conveyance, and this issue should not have been submitted to the jury. Schaefer v. Railroad, 128 Mo. 71; Schepers v. Railroad, 126 Mo. 665. (5) The court erred in giving to the jury instruction numbered 2 asked by plaintiff, which told the jury that plaintiff was not required to give defendant notice of the injury, within ten days of the event causing said injury, and in refusing instruction "K" asked by defendant to the effect that such notice was necessary, and that plaintiff was not entitled to recover in the absence of

proof that he gave defendant such notice. 1 Am. & Eng. Enc. of Law (2 Ed.), 323; Heywood v. Assn., 85 Me. 289; Cawley v. Assn., 1 C. & E. (2 B.), 597; Cohn v. Ins. Co., 62 Mo. App. 271; Albers v. Ins. Co., 68 Mo. App. 543; Burnham v. Ins. Co., 75 Mo. App. 394-397; Clanton v. Assn., 101 Mo. App. 312. (6) The court erred in refusing to compel the plaintiff to obey the subpoena *duces tecum* duly issued and served on plaintiff, which commanded him to produce at the trial letters written by him during the time in which he claims to have been disabled, and for which he seeks to recover indemnity. R. S. 1899, sec. 4654; 1 Thompson on Trials, sec. 731. (7) The court erred in making improper remarks in the presence of the jury, and during the progress of the trial, which prejudiced the jury against defendant. 21 Ency. of Plead. & Pr., 994, 1000; Abbot's Trial Brief (Civ. Jury Tr.), 358; McIntosh v. McIntosh, 79 Mich. 198, 203; Williams v. West Bay City, 119 Mich. 395; Cronkhite v. Dickinson, 51 Mich. 177; McDuff v. Journal Co., 84 Mich. 1; Wheeler v. Wallace, 53 Mich. 355; Walker v. Coleman, 55 Kan. 381.

*Ward, Hadley & Neel* for respondent.

(1) Plaintiff was immediately, continuously and wholly disabled within the meaning of defendant's policy of insurance. 17 A. & E. Ency. of Law (2 Ed.), 15; Cunningham v. Surety Co., 82 Mo. App. 607, 614. (2) Respondent was injured while actually riding as a passenger on a public conveyance. Smith v. Railroad, 32 Minn. 1, cited with approval by our Supreme Court in Barth v. Railroad, 142 Mo. 535; Barth v. Railroad, 142 Mo. 546; Holt v. Railroad, 87 Mo. App. 203. (3) The failure of respondent to notify appellant of his injury within ten days after the happening thereof was not and is not fatal to a recovery in this case. Joyce on Insurance, sec. 3282; Dezell v. Casualty Co., 176 Mo.

253. (4) The subpoena *duces tecum* served on respondent was of no force and effect.

ELLISON, J.—The plaintiff, a wholesale and retail queensware merchant, fell from a street car and suffered injury. He had in force at the time with defendant company, what is known as an accident insurance policy wherein it was stipulated that if he was hurt in certain named ways, which caused certain described disabilities, he should receive indemnity at the rate of fifty dollars per week during the time he was disabled, not exceeding 104 weeks. He brought this action on the policy and prevailed in the trial court. The chief contention between the parties relates to the construction to be given, under the evidence, to the following provisions of the policy:

"In consideration of the agreements and warranties contained in the application for this policy, which application is made a part of this contract of insurance, and the payment of an annual premium of $24, does hereby insure, subject to the provisions hereof, J. Crawford James, of Kansas City, Missouri, by occupation a proprietor, wholesale and retail queensware (office duties and traveling only) classified by the company as No. 1.

"Against loss, as hereinafter provided, caused solely and exclusively by bodily injuries, which are immediately, continuously and wholly disabling, and which are effected by external, violent and accidental means, . . . For loss of time per week, for a term not exceeding one hundred and four consecutive weeks, $25. . . By wholly disabled shall be understood that the insured is totally unable to perform any part of the duties pertaining to the occupation stated above."

The evidence disclosed that plaintiff fell from a moving street car and was severely injured on and about the knee. That he was confined to his bed a small part of the time and went upon crutches all of the time for

113 app—40

which he claims indemnity. That, excepting a time he was absent from the city, he came to his place of business almost daily where he signed checks, approved orders for goods and dictated letters. His absence was while he was on a business trip to New York for the purpose of buying goods. But he could not do many of the principal matters pertaining to the business of a queensware merchant. He could not get about the store and was compelled to sit in his office in a crippled condition. His wholesale house was a building of five or six stories and his presence was required in all parts of it. His retail place was several blocks away and his duties required him at each place every day when at home. When in health he looked after customers, sold goods, saw that they were packed and shipped. He supervised the force of employees, including traveling men who sold goods for the house in several States and territories; and with these he frequently took trips. His efforts at business in New York were hampered by his injury. He could only visit a small number of the many houses he usually dealt with—perhaps only two. He was compelled to travel about in a cab and to be accompanied by some one to assist him.

The parties were quite liberal in the breadth and scope each allowed the other at the trial of the cause; and that cuts an important figure in the conclusion we have reached. For, the rule prevails uniformly in this State that the parties, on appeal, are bound by the theory, mode and manner they adopt in the trial court. [Hill v. Drug Co., 140 Mo. 433.]

It appears that the policy did not insure plaintiff against a disabling of the performance of the general occupation of a proprietor of a wholesale and retail queensware merchant; for it specifically limited the insurance to the office duties and traveling of such occupation. And so the question should have been, under such limited view of the clause in question, "was plain-

tiff wholly disabled from performing office duties and traveling?" The evidence shows that he was, perhaps, not so disabled, for he did, practically, much of the office duties he could have performed had he not been injured, and he did a part of the traveling. But defendant allowed the issue to broaden into the field of the plaintiff's general occupation as a wholesale and retail queensware merchant. For, while objection was made to plaintiff showing that he was substantially prevented from attending to his business as a queensware merchant, an examination of the record will show that no effort was made to confine such business to the two branches, viz.: office business and traveling. In other words, that point on the policy was not made and plaintiff was permitted by defendant to state the relation the injury had to his performing the whole business, defendant's counsel joining in such examination. That is, the parties have interpreted the policy as covering, generally, the entire business of a wholesale and retail queensware merchant. And plaintiff, not to be outdone in courtesy and liberality, permitted defendant to inquire into plaintiff's various other occupations, such as member of the school board, director of other business corporations, etc., with a view of ascertaining if he was wholly disabled from performing the duties devolving upon him in those parts of his business. One might be very well able to perform the duties of a director in a school or gas company and yet be wholly unable to travel or conduct the office of a queensware merchant. So we take the case as we find it, and must therefore determine whether the trial court would have been justified under the evidence in declaring, as a matter of law, that plaintiff was not wholly disabled from performing the general occupation of a wholesale and retail queensware merchant. If, as appears from the case cited further on, a physician was insured for that occupation, he might receive an injury which would

wholly disable him, physically, from going about to visit patients, yet leave him able to dictate prescriptions from a sick room.   Or, the injury might leave him able to travel around as usual, but mentally unable to give prescriptions.   In neither instance would a court be justified in declaring, as a matter of law, that he was not wholly disabled to perform the calling of a physician in the sense of the contract.

We therefore hold the contract to mean, not that the assured was rendered absolutely and literally unable to perform any part of his occupation, but that he was disabled from performing substantially the occupation stated in the policy. [Young v. Ins. Co., 80 Me. 244; Wolcott v. Ins. Co., 55 Hun 98; Hohn v. Ins. Co., 115 Mich. 79; Turner v. Ins. Co., 112 Mich. 425.] In the latter case the assured's occupation was that of a real estate agent. His injury was a dislocation of the shoulder which did not prevent him going to his office every day. Yet, the court held that it should not be said, as a matter of law, that he was not wholly disabled within the meaning of the policy. These cases are supported by text-writers. [4 Joyce on Ins., sec. 3031.]

But stress is laid by defendant's able counsel upon a part of the clause above set out which, itself, assumes to define what is meant by wholly disabled, wherein it is said that the assured must be *totally* unable to perform *any part* of his duties. We do not consider that such provision has any material control over the other portion of the clause. When parties enter into a contract it must be assumed that they intended that which in certain events or contingencies would mean something and have some effective force. And so it has been held that if a promissory note reads that, A promises not to pay B one hundred dollars, the word "not" will be disregarded, since the parties must have meant something

by the execution of the note. [Story on Promissory Notes, sec. 12; 1 Parsons, Notes and Bills, 26.]

The occupation of a merchant calls for both mental and physical exertion. If "wholly disabled" means that he shall, *literally*, be totally unable to perform *any* part of his business, then mental capacity exercised in merely directing, in a single instance a matter the most trivial, as, for instance, to sweep the floor, or the physical effort of doing it himself, would bar a recovery on the policy. Total mental disability means that one must have his mental faculties entirely suspended; and total physical disability means the loss of power to move. It cannot be that the parties intended that before an assured could recover on the policy he should lie the full period of his injury in a state of coma. To interpret the clause in its contractual sense as defendant seeks to have us do, would render the contract utterly useless to an assured and would be nothing short, practically speaking, of collecting a premium without rendering a consideration.

We therefore find ourselves driven back to the position taken by the authorities on the construction of the first part of the clause, viz.: that the disability meant, is a disability as to the performance of any substantial part of the business.

The policy provided that if the assured was injured "while actually riding as a passenger on a public conveyance propelled by steam, electricity or cable," he should recover twice the amount specified in the policy. Defendant denies that plaintiff was a passenger. The question was left to the jury and the finding was in plaintiff's favor. Beyond doubt, plaintiff was on his way home, which was in another part of the city, and was intending to get there by taking a car when he arrived at the proper street. He saw the car standing at the proper place. He stopped to buy a newspaper of a boy. Seeing the car about to start, he walked rapidly—or, perhaps, ran—and got on the platform just as it was

starting. If it had started before he got on it had not moved more than one or two feet. He says that he got upon the car and rode across the street to where there was a sharp upgrade, a distance of between fifty and one hundred feet. That at such point the car gave a sudden jerk which threw him to the ground. At one point in his testimony he stated that possibly the unsteadiness of other passengers on the platform may have thrown him off. The whole of his statement indicates that he was not standing firmly upon the car with both feet, but was in a position to have safely ridden but for the sudden lurching of the car. It is common knowledge that what was known as cable cars carried passengers in great numbers in much less secure way than do cars propelled by steam. We are satisfied the court rightly refused to declare as a matter of law that plaintiff was not a passenger. On this subject see Barth v. Railroad, 142 Mo. 546; Smith v. Railroad, 32 Minn. 1; Holt v. Railroad, 87 Mo. App. 203; Ins. Co. v. Muir, 126 Fed. Rep. 926.

The policy contained a provision requiring the assured to give notice to defendant within ten days of the accident. The notice was not given. There was no provision of forfeiture in case notice was not given. There was, however, at another part of the policy, a provision that a claim should not be valid "unless the provisions and conditions of the contract of insurance are complied with by the insured." We do not regard this as an express provision that the policy would be forfeited for want of notice. There should be a clear and an express statement for forfeiture before the courts will enforce it. [Dezell v. Casualty Co., 176 Mo. 279-282; 4 Joyce on Ins., sec. 3282.]

It is next insisted that the trial court's manner towards defendant's counsel was abrupt and unwarranted, and that it prejudiced the jury against defendant's case. The matter relates to what transpired in re-

lation to a subpoena *duces tecum* for plaintiff's books and correspondence generally. There was a large collection, requiring the use of a wagon. The trial court reflected somewhat on counsel for not particularizing those wanted so that they might have been separated from the mass before the moment of needing them. We have no way of judging of what transpired except from the record and we cannot say that anything occurred to warrant our interference.

We have examined other points made, but have not discovered anything to justify a reversal, and therefore affirm the judgment. All concur.